1-4-1-3-5-9 Larry V. This is the city of Tufts. Personal representation of the estate of Mr. Good afternoon. May it please the Court, Mark Bendura appearing on behalf of Plaintiff Appellant Larry Lee. Before you really get launched, I want to see if I can perhaps simplify the direction here. If the trial judge was allowed to proceed in the manner that she did on the exhaustion issue with a bench trial, then our review would be limited to the way we review judges' decisions and credibility and so forth. Assuming for a moment that she was entitled to a bench trial, then you have a fairly tough burden to overcome the way we review findings of the kind she made relative to whether there was anything filed and when it was filed and so forth. That's correct. In fact, for our purposes, I recognize it's a disputed issue of fact and I'm not going to argue that it was clearly erroneous or whatever the standard might be for judicial findings on disputed issues of fact. My arguments really, though, are twofold. One is, as you pointed out, this fundamental question of whether it is an issue to be tried by the court or by the jury. And the second question, which is unique to Dr. Mera, is the effect of two different grievances. The evidence you're hearing dealt with the force of what we've called the handwritten grievance. When we got to the question of the summary judgment motion of Dr. Mera afterwards, their argument in substance was, since you've already ruled that the handwritten grievance doesn't exhaust any remedies, we win. If we go back to the first question, I'm again trying to cut to the chase here. As I understand it, there are at least six circuits that have held this is a judge question. You don't get a jury trial on this factual question of did you exhaust. I haven't counted them, but I think you're probably right. And I can't find any authority that says you do. So why would we, if that's what we were doing, create a circuit split on that question? I think just because it's the right solution. If you look at the basis that the other courts are, you sort of get, as you can understand, the first decision and then others kind of fall in place. If you go back to the basis of it, they say a couple of things. One of them is that it is akin to jurisdiction. That is, whether the court ought to take a case. If you actually look at the text of the statute, it's a timing one. It says no suit should be brought until. It's been denominated an affirmative defense by the Supreme Court in the Jones case. It seems to me that if you are trying to determine what is it most akin to, it's not jurisdictional, it's waivable, it's an affirmative defense. And it can be raised at specified times in contrast to a jurisdictional defect, which can be raised at any point. It seems closer to me to look at it as a statute of limitation question or as a qualified immunity question. And if there's no dispute of material fact, then under any standard, the normal summary judgment standards, the judge decides. And I'm going to Would the law be that you go through a trial on the question of whether you exhausted, as opposed to deciding that preliminarily and sending it to state court if that's where it should be, because under comedy, it needs to be exhausted and they need to get the first crack at correcting the problem if there's a problem. Well, actually, the whole idea of exhaustion isn't as between courts, it's with respect to the prison authorities. Okay. And so it's like other... You're right, you're right. I've conflated a couple cases here. But it's the same idea. If the authorities can solve it, then we shouldn't be screwing around with it in court. So why would you wait until the end of a trial to decide that? Well, this was four years into the case, but... But isn't another analogy to personal jurisdiction, which is not, which is also waivable. Personal jurisdiction is a waivable defense. Right. And don't judges usually decide personal jurisdiction? They do. And that's an interesting analogy, because under personal jurisdiction, if you have litigated the merits of the case, you have waived a personal jurisdiction challenge. And in this case, we were litigating this case for four years before they finally asked for a separate bench trial on the issue of exhaustion. So if you follow through with the personal jurisdiction... But did they raise this affirmative defense in their answer? I think that they raised in their litany of answers an affirmative defense failure to exhaust. After a couple of summary judgment motions, a pretrial appeal to this court, when we were a month or two away from trial, is when they raised for the first time the idea that this ought to be a bench-tried preliminary trial. Well, a lot of time passed, but as you partially explained, there was a lot of stuff going on. There was. Qualified immunity, appeal, and so forth. And so the time just stated by itself doesn't tell the whole story. Right. But it seems to be sort of circular in the sense that one can say it's efficient to be decided early. But again, if you assume that the judge finds that there has been exhaustion, you now have duplicate trials. You have the judge trying the issue of exhaustion, and then if exhaustion is found, you have a separate jury trial. And so if you're looking at it in terms of efficiency, it's sort of a circular argument depending upon how the exhaustion question is ultimately decided. The theory would be that the exhaustion trial before the judge only involves certain limited issues, i.e. the grievance. Was a grievance filed? Did they go through step one, step two, step three? Yes, there's exhaustion. Then we move on to the merits of the case. But in this particular case, we've got something quite different. We've got the judge deciding the credibility of my client, which is... Which is why I don't know why you gave that up. Why we gave what up? Why you gave up in oral argument. You said you're not going to argue that the district judge was wrong in her credibility determinations. Well, I'm saying that we can't meet a clearly erroneous standard because the whole thing assumes that reasonable people can reach different conclusions. And the fact that the Seventh Amendment and the 1983 allow for trial by jury doesn't mean any disrespect for the court, but it instead recognizes that someone else ought to be making these findings. And these are the sort of findings that are traditionally in front of a jury. Do you believe Mr. Lee? Do you draw the inference from the fact that other people claim not to have received it, that it was not in fact signed or filed in a timely fashion? And that's part of the problem, is the overlap. Because when you boil down to it, much of their position was he wasn't really raped, and therefore he couldn't have filed a grievance regarding it in a timely fashion. So you've got that sort of overlap where the judge is deciding exhaustion by deciding essentially the same issues that would go to the jury on the substantive merits. Go ahead. I was just going to say, because I know there's another, so to speak, string in your bow, and let's just assume for the moment that the judge was okay with a bench trial, and tell us about why it doesn't make any difference in your view. Because there were two separate grievances that everybody acknowledges were filed and adjudicated and everything else. There are exhibits C and D to the MDOC exhibits at the hearing, and we had our own version. And those were grievances in which corrections officers were the principally named people. Can you give us the names of those so I can... Thomas, I believe, is one. That's exhibit three, is that right? I'll use their exhibits, and it's exhibit C, which pertains to Sergeant Thomas, and D, which pertains to Officer Zischke. And this is the issue, it's not about whether this was ever got into the proper box, but it has to do with the mention at the second step of the grievance of Dr. Mehra and whether the rule that you have to bring it up in the first was waived because they made a merits decision in effect waiving it, and the response is, well, the merits only related to two officers and really didn't cover Dr. Mehra, right? Right. And on the second step, the complaint by Mr. Lee is that I told my psychologist, Paul Schneeman, and then there's also a notation, and I also notified Dr. Mehra. It's M-I-R-A, but I think we recognize that as a misspelling. Do you have a page ID on this? One of them, I think, is 319. At least that's what I'm looking at, which is the Thomas one. Thank you. And they're really essentially the same. 325 is another one. Interestingly, the response by the warden goes on to say, the grievance concludes that he made his psychologist aware of his complaints. And so the warden understood that the grievance extended to the people who had been told by Mr. Lee of the misconduct of Zischke and Thomas, which he contended put him at risk of what eventually occurred. Well, are you complaining here about Mehra not having adequately protected him from the rape, or something different or broader than that? I would say from not protecting him from the undue risk of rape, which had been made clear by the comments of the MDOC people who outed him. Now, where do we find something like that in either of these grievances relating to these other two that mention Mehra? They say that, in substance, Zischke and Thomas outed me and disrespected me and made me out to be homosexual in front of the prison population. And then the grievance goes on to say, I told Schneeman and Mehra. Now, I understand these were not drafted by lawyers, and it could have been made more clear, but the entire gist of this case, and the underlying Mehra's discovery, was to the effect that the inaction by Mehra and others put him at risk, and that was really the substance of the previous qualified immunity appeal. So normally you have to name a prison official in step one. This was not done. Pardon me? Normally you have to name a prison official in step one, and this occurred, the Mehra references in both of these are in step two. Correct. And our position is that once it's addressed on the merits and is understood by the warden, that that avoids the problem. And we've cited a couple cases in our brief that we think say that. And I would analogize it, if I've got a minute. Yeah, definitely. That it's like preservation in the lower court, where one could argue that the appealing party did not properly preserve it, but if the other side responds to that issue and the district court judge decides it, then it's up for appropriate review. So what are the cases that support you? One is the Haya Yu case, and the other is the Ellis case. They're both cited at page 31 of our brief. Thank you very much. Good afternoon. May it please the Court. My name is Patrick McLean. I represent the sole remaining defendant, the late Dr. Mehra, his estate. I was present at the district court's bench trial, the dead client. I didn't participate. And at that time, the ball was carried by the then actively participating co-defendants, the state of Michigan corrections officials, the MDOC defendants. And so I think the central question here, what we start out with, the debate is really about who decides. It's a who decides question. And yes, it's true that six circuits have decided that question the way Judge Edmonds did, which is to say that when considering a PLRA question of exhaustion, that that properly is considered to be a preliminary matter of judicial traffic control as opposed to an ultimate merits question for a jury to decide. And yes, there's all the obvious problems with dumping that determination into an endgame jury trial because it prevents the policy of the PLRA is to reduce the quantity of federal cases and to promote administrative review and effective prison adjustment of these questions in the first place. Well, we've got a lot of different analogies. So we could analogize to personal jurisdiction, which my understanding is usually decided by the judge. But what about your opponent's argument that the analogy of exhaustion should be like a statute of limitations issue, and who decides that? I think he was trying to say that we had waived the defense and that statute of limitations is waivable, and therefore this was waived by the defense. I would remind the court that the first thing the merit defense did in this case was not to bark up the tree of qualified immunity. It was to file a motion, which was considered by the magistrate judge, for summary judgment based on failure to exhaust. That was our first move. Yes, we pleaded the defense, and we moved for summary judgment on that issue right away. That's not waiving it. I didn't hear the answer on the statute of limitations question that I just asked you. I thought he was getting at that it was waivable. But I thought that he was saying that it was similar to the decision maker for the statute of limitations issue. And do you know who decides the statute of limitations issue? Is it the judge? I believe a threshold question of fact necessary to determine whether or not a statute of limitations has expired is made by the judge. It's by the judge. So that would be a similar situation. Yes. Courts have talked about personal jurisdiction and subject matter jurisdiction in the context of saying that's a preliminary matter. It's not jurisdictional in the magic sense of that word. Well, subject matter jurisdiction is jurisdictional. It would be, yes. Personal is not, and statute of limitations is not. Yes. Let me ask you this because I found this a little confusing. I'm aware, as you just stated, that your first response was to raise the exhaustion issue and the summary judgment motion, which at that point in time anyway you weren't successful. I did not succeed. And so in things, and we've mentioned like qualified immunity, which is decided up front, but there are some differences between these two things that I don't want to get into. But I guess when I read this record for the first time I sort of was jolted when I saw this bench trial thing because obviously a judge's role in a bench trial is different than a judge's role in deciding a summary judgment motion, is it not, in terms of the kinds of decisions and the presumptions that must be made. In a bench trial you don't go in with any presumptions like you do on a summary judgment motion. Is it a bench trial or an evidentiary hearing, and is there a difference? I'm answering your question with a question, but I think Judge Edmund said that we'll have an evidentiary hearing in which the defendants, not the plaintiff, have the burden of proof because it's an affirmative defense. Well, an evidentiary hearing is just that. And if, for example, a motion to suppress an evidentiary hearing, you can make credibility determinations and whatnot. In fact, that's what they basically go on. There's no two ways about the fact that there are disputed facts at the core of this defense, and neither side is here suggesting otherwise. Somebody has to decide, did this plaintiff exhaust his administrative remedies? Did this prisoner exhaust his administrative remedies? And it is the wisdom of these other circuits' decisions that that is a matter, a preliminary matter for the court, and it need be so to vindicate the purposes of the PLRA. Well, let's assume that that is correct, that it should be decided by the judge. Why wasn't the judge clearly erroneous in her credibility findings when she said she couldn't believe that a letter that was addressed to five different prison officials could get lost and not be received by any of them, or at least that they couldn't recall receiving the letter when they also said they didn't even recall this individual? Well, there are several reasons why the judge is not clearly erroneous. There were grievances filed the next two or three days. There were actual grievance forms. Actual grievance forms, which made no mention of these events. The grievances were processed serially by the system, A, B, C, D, E, F, G, H, and there would be an F, as Mr. Lee contended he did. He put in the middle of this. In other words, April 10th is the date of this piece of paper that materializes later. It was the claim of my co-defendants in that hearing that that was a contrived, fabricated, after-the-fact document. Judge Edmonds makes reference to that in the transcript. And they had actual grievances from April 7th, actual grievances from April 13th. They're numbered serially. If he really did, on April 10th, put a piece of paper in the same box, the system would have captured that serially. It wasn't there. Judge Edmonds also observed that the plaintiff's theory of an ignored complaint of rape in the middle of relatively trivial, whiny complaints about less weighty matters implicates a lot of people in a cover-up or a conspiracy of silence and, you know, rape in a prison is a serious thing. Judge Edmonds made that point that you would expect the institution to react to that and there is no reaction. Mr. Lee is not, you know, Mr. Lee was convicted, he was in prison in the first place for a crime of deception. Sexual assault is not thought of as a crime of deception, it's a crime of violence, that's true. But he was convicted of sexually assaulting males by deceiving them. And at his trial in state court, he insisted on dressing as a woman and then accused his public defender of being ineffective for not stopping him. And you have that State Court of Appeals unpublished opinion. Mr. Lee is not a believable person at all. And Judge Edmonds' finding is not clearly erroneous and I don't blame my opponent at all for conceding that point because that's the weakest link in his chain is the credibility of his own client. Somebody has to decide. Judge Edmonds listened to him and listened to the, not to my client, but to the co-defendant of prison officials and she found for good and valid reasons that she didn't think he had really done that. She didn't think he had really put that form in the box. What about his argument number two that your client was mentioned in these other grievances? I've found some of them and it talks about, he does make the statement that, and I said something to my psychologist. And I also told Dr. Mirra, I misspelled Mirra, yes. That's all right, we don't. Yeah, and that's in a step two. That's in a step two grievance against somebody else and even if you would characterize that as a grievance against Dr. Mirra, it wasn't pursued to step three either and under the exhaustion doctrine he has to do that. Judge Edmonds cited decisions of this court for the premise that it's a three-step analysis, was an administrative remedy available, did the defendants inhibit exhaustion, and do special circumstances justify non-exhaustion? And she found that he didn't meet those tests. It clearly had a remedy. We have this box, we have these actual grievances filed. There is no evidence of inhibited exhaustion of remedies by the defendants and there is no special circumstances justifying non-exhaustion. Yes, he mentioned. He seems to be saying, as I understand it, he concedes that in these other grievances, they're not related to the rape, but he seems to be saying that his client filed grievances against other people claiming that they had disrespected him and his sexual orientation and that he mentioned something to your client. Now, the theory, as I understand it, means that this disrespect, which is a big deal, as you know, in a prison, that that then resulted in the prison authorities not being attentive to his problems and that's why he got raped. So the question is, is that adequate? Is that mention of your client's name in these other grievances adequate or not? That would be his challenge in a causation argument in a trial if Judge Edmonds had found exhaustion. But in an exhaustion setting, he didn't exhaust the grievance mechanism against my client. He didn't pursue it to Stage 3. He didn't mention it in Stage 1. He just didn't do it. He made a parenthetical mention of him in somebody else's Stage 2. Your argument, as I understand it, is we don't really need to focus on what he said about your client in Stage 2 because he missed Stage 1 and Stage 3 in any event. Absolutely. Is that it? Absolutely. Absolutely. This is a prisoner who brought two cases. He settled the other one for money, which is why I'm the only one left. He settled the other one for money and the MDOC defendants are not here because they agreed, in exchange for being released, not to chase him for the cost of his incarceration. That was his second money. Right. That's the second thing of value received from suing them. Government entities. Government entities, right. I think Mr. Lee has had quite enough indulgence from the system. I think I've said enough. Is there anything else that I can help the panel with? Thank you. Thank you. If you could respond on the Step 3. Well, if you look at the Step 3, they reflect that they have reviewed the documents submitted. My understanding of the process is, and I'm not certain of it, but that there is a third stage person who reviews what has been submitted at Step 2 and the Step 2 decision. My understanding is that in Step 3, the grievant has to make a complaint against the specific prison official that he's upset with. And the Step 3, the typed things there, both of them talk about Lee suffering from migraines and make complaints against the primary named individual, Thomas in one case and Zischke in the other. But there's no reference to Mira in the Step 3s. My understanding of the Step 3 process is that there is no separate submission by the grievant. He just asks for independent review by whoever it is that reviews the grievances, who is different than the respondent. The Step 2, Step 1 initiates the process. Step 2 is what goes to the warden. And in this particular case, the warden reflects his understanding of what is being complained of and includes the psychologist. So you don't think you have to say who you're pursuing to Step 3? It's whoever you named in Step 2? My understanding is Step 3 doesn't involve a separate submission by the grievant. Well, look at Step 3 on page 319, which is the Thomas one. And it's written in the first person. It says, Lee, that's the third person, suffers from migraines due to a closed head injury. Sergeant D. Thomas frequently harassed me because of my sexual orientation. When I was fortunate enough not to have a migraine, Sergeant Thomas did this. I see what you're talking about. It's on the same page as the Step 2 in which he mentions Dr. Mira. Right. So, I mean, my understanding is when you submit the same page on which you've reflected your complaints about Dr. Mira or what has happened and has been reported to Dr. Mira, I think that we are imposing some pretty technical legal pleading standards on prisoners if we say that it's not enough to submit it on the same page in which you've complained. Yeah, but what's happened in between Step 2 and Step 3, the individual's complaints, is the Step 2 response, which says, see attached, which happens to be put on page 318, where there's a summary of the Step 2 investigation and the conclusion is, based on review of the record, no further action is warranted. Your grievance is considered denied. But in each of those, he is complaining about the conduct of the corrections officer. But he's not. It's in the same group of papers. That's clear. So you do Step 1. They send it back to you with whatever the answer is. You don't like it, you send it back with Step 2 filled out. You don't like it, you send it back with Step 3 filled out. So when we look at it, as a matter of fact, it tells you right on there the date that it was returned to him so that he could file Step 3. And I'm looking at the Step 3 page regarding Zischke. If you just look at Step 3, where does it say that he is complaining against the doctor? It doesn't. It says he complains of Zischke frequently harassing him. That's on the Zischke one. It's on 325, yeah. And that's on the same page that he has just said, Zischke's been harassing me and I told Mira and Schneemann. But he didn't say that he was complaining about the doctor in Step 3. There's no reference to the doctor in either of the Step 3s. Is that a correct statement? I think that's correct. Which is even all the more relevant because of the, again, we're back to credibility, but of the marginal reference to Dr. Mira in the Step 2. Even that was a marginal reference. Nobody disputes that. Well, I know, but it all sort of is tied together because arguably you could say, let's give him the benefit of the doubt and say that he did mention Mira in Step 2 and that that wasn't something he added later on. There's no question about that. And he complained against Mira and Zischke, but when he goes to 3, he only complains about Zischke, which arguably could constitute an abandonment of that. I think that that's kind of covered by the cases that recognize the core purpose of this process. And certainly the warden was aware of his complaint about Mira through Step 2. And I think the cases recognize that you should look at the exhaustion process in light of its purpose. Are the prison authorities made aware, at least in this case, that one of your complaints is about Dr. Mira and the fact that he was made aware of the problems and didn't do anything about it. And, of course, there's also Mira's testimony from both Mira and Lee about his discussions with Mira in which he related that he was being at risk. And Mira's own notes, although Mira doesn't remember Lee, his own notes reflect discussions of this nature, his homosexuality, and his concerns about that. I don't see how you're, even if you were right, how you're saved in connection with this grievance that's involving Zischke that Judge Moore has pointed out as Page ID 319 because it says he complained to a different psychologist. Actually, it says... It's not a question of a misspelling of the remaining defendant here. It's a different one. Actually, he mentions both Schneeman and Mira. Where? Mira's in the margin on the left-hand side. Oh, okay. It looks like it's written at a different time, to be perfect. But I think there's no dispute about the authenticity of that. I mean, that was taken right from the department's records. How do you know it was written at the time of Step 2 as opposed to when this document went back to him at Step 3? Did the prison send keep track of that so that you, in fact, can say that? Once it's submitted by Mr. Lee, it's in the hands of the prison people. And so when they come up with the documents in discovery and at the exhibit, those are the MDOC documents that they have received which contain that notation. I don't think anybody disputes that that notation was on the Step 2 filing at the time he made it. Thank you. Sorry we've kept you beyond your time. Thank you both for your argument. The case will be submitted.